UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Daphne Reck,

                      Plaintiff,                  **MEMORANDUM OPINION AND ORDER**

      v.                                          Civil No. 07-3756 ADM/JSM

Town & Country Credit Corporation,
Deutsche Bank National Trust Company, &
Dennis Tureson, Jr.,

                      Defendants.

___

John M. Tancabel, Esq., Tancabel Law Office, St. Paul, MN, argued on behalf of the Plaintiff.

Seth J.S. Leventhal, Esq., Dorsey & Whitney LLP, Minneapolis, MN, argued on behalf of the Defendants.
___

## I. INTRODUCTION

On November 1, 2007, the undersigned United States District Judge heard oral argument on Defendants' Motion to Dismiss [Docket No. 4]. Plaintiff Daphne Reck ("Reck") asserts six counts in her Complaint [Docket No. 1]. In Count 1 she seeks declaratory judgment that her mortgage with Town & Country Credit ("TCCC") is void; in Count Two she asserts that TCCC's violation of provisions of the Truth in Lending Act ("TILA") rescinds her mortgage; in Count Three she seeks declaratory judgment that there was no default justifying TCCC's foreclosure of her property; in Count IV, Reck alleges that the amount of the lender's fees violated Minn. Stat. § 58.137 thus requiring the Court to declare the mortgage void and award Reck damages; in Count V, Reck seeks an accounting to determine the correct settlement amount; and, in Count VI, Reck seeks damages for the alleged negligence of TCCC's notary Dennis Tureson, Jr. Compl. ¶¶ 57-104. Reck failed to respond to TCCC's motion regarding Counts IV and V in her

memorandum opposing TCCC's motion and at oral argument. Accordingly, Counts IV and V have been abandoned as claims for relief. For the reasons set forth below, this Court grants TCCC's motion to dismiss the remaining counts.

## II.  BACKGROUND[1]

Reck and her mother Diane Reck ("Diane") jointly own and reside at 1145 Case Avenue East, St. Paul, Minnesota 55106 (legally described as Lot 22, Block 8, Hillsdale, Ramsey County, Minnesota) (the "home"). Id. ¶¶ 4-5, 10. TCCC is a Delaware corporation with its principal place of business in California. Id. ¶ 13. Deutsche Bank National Trust Company ("Deutsche Bank") is a foreign corporation that maintains corporate offices in California. Id. ¶ 15. Dennis Tureson, Jr. ("Tureson") resides in Minnesota where he was last registered as a notary. Id. ¶ 18.

On August 23, 2002, Reck and Diane obtained a $146,300 mortgage on their home from Ameriquest. Id. ¶ 19; Leventhal Decl. [Docket No. 6] Ex. G. In 2003, Reck applied and was approved for a $180,000 adjustable rate refinance mortgage from TCCC. Compl. ¶¶ 20-23. On November 5, 2003, a TCCC loan officer met Reck at her place of employment so she could sign the mortgage loan documents. Id. ¶ 26. As part of the loan transaction, TCCC sought a security interest in the home. Id. ¶ 31. Because Reck was not the sole owner of the home, the TCCC loan officer gave her an unsigned quit claim deed, dated November 5, 2003, that would convey Diane's interest in the home to Reck. Id. ¶ 33. The loan officer instructed Reck to obtain her mother's signature on the deed. Id. ¶ 43. Reck contends that she obtained Diane's signature on

---

[1] In considering a motion to dismiss, the pleadings are construed in the light most favorable to the nonmoving party, and the facts alleged in the complaint must be taken as true. Hamm v. Groose, 15 F.3d 110, 112 (8th Cir. 1994).

the quit claim deed when she knew Diane to be incompetent and without having a notary present to witness the signing.  Id.  ¶¶ 36, 37.  Reck subsequently executed the mortgage, which listed TCCC as the lender and Reck as the sole borrower.  Mortgage (Leventhal Decl. Ex. D).  On November 5, 2003, the same day Reck signed the loan documents but before she obtained her mother's signature on the quit claim deed, Reck signed an affidavit of title stating that she was the sole owner of the home.  Leventhal Decl. Ex. H.

Reck's loan payments on the TCCC mortgage were to start on January 1, 2004.  Id. Ex. F.  On June 14, 2005, after Reck missed several payments, AMC Mortgage Services contacted her to work out a forbearance plan to collect $7,000 in missed payments.  Id. Ex. J.  The next day, AMC sent Reck a notice cancelling the forbearance plan because of her failure to pay $7,000 by June 15, 2005.  Id.  The June 15 letter also informed Reck that AMC was foreclosing her property.  Id.  Despite AMC's stated intent to proceed with foreclosure of the home, it continued to attempt to work out a forbearance plan with Reck and it appears that Reck made some mortgage payments in 2005 and early 2006.  Id.  Despite these efforts, on October 19, 2006, the property was sold at a sheriff's sale.  Compl. ¶ 55.

On November 5, 2003, when Reck signed the TCCC mortgage documents, she also signed a "Notice of Right to Cancel."  Notice of Right to Cancel ("NOR") (Leventhal Decl. Ex. I).  The notice informed her of the time period within which she could exercise her right to cancel the mortgage and the steps she needed to take to exercise that right.  Id.  The NOR indicates that the final date to cancel was November 8, 2003.  Id.  Reck signed the NOR and dated it November 5, 2003.  Id.  On August 9, 2006, nearly three years later, Reck sent a notice of rescission to TCCC.  Compl. ¶ 51.

3

On May 18, 2007, Reck filed suit in Ramsey County District Court asserting these claims. On August 20, 2007, TCCC removed the action to this Court.

### III. Discussion

**A.     Motion to Dismiss Standard**

Rule 12 of the Federal Rules of Civil Procedure provides that a party may move to dismiss a complaint for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). In considering a motion to dismiss, the pleadings are construed in the light most favorable to the nonmoving party, and the facts alleged in the complaint must be taken as true. Hamm, 15 F.3d at 112; Ossman v. Diana Corp., 825 F. Supp. 870, 879-80 (D. Minn. 1993). Any ambiguities concerning the sufficiency of the claims must be resolved in favor of the nonmoving party. Ossman, 825 F. Supp. at 880. "A motion to dismiss should be granted as a practical matter . . . only in the unusual case in which the plaintiff includes allegations that show on the face of the complaint that there is some insuperable bar to relief." Frey v. City of Herculaneum, 44 F.3d 667, 671 (8th Cir. 1995).

Under Rule 8(a) of the Federal Rules of Civil Procedure, pleadings "shall contain a short and plain statement of the claim showing that the pleader is entitled to relief." A pleading must contain "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955, 1974 (2007).

**B.     Count II**

Because Count II is the only federal law claim asserted by Reck, and thus the basis for federal jurisdiction, the Court begins with its analysis of that claim. In Count II, Reck contends that her mortgage with TCCC violated provisions of TILA allowing it to now be rescinded.

Reck contends that TCCC failed to deliver two copies of the NOR and failed to deliver all material disclosures as required under TILA, 15 U.S.C. § 1635(a), and Regulation Z, 12 C.F.R. § 226. Compl. ¶¶ 64, 65. Reck contends that because TCCC did not provide her with any NOR or, in the alternative, the correct NOR, id. ¶ 65(g), the right to rescind extended to three years from the date of the consummation of the loan. Id. ¶¶ 64-67.

TCCC contends that the doctrines of unclean hands and laches bar Reck from the equitable remedy of rescission. TCCC contends that Reck received and signed the NOR, that her signed acknowledgment creates a presumption of receipt, and that Reck has not alleged any basis to overcome that presumption. Next, TCCC asserts that it provided Reck with the correct form and that even if it hadn't, that failure does not violate TILA as a matter of law. As for Reck's contention that she did not receive all material disclosures, TCCC asserts that Reck's claim cannot survive the Twombly standard because she failed to allege how any of the disclosures she received were inaccurate or improper.

Reck's contention that she did not receive any NOR is without any support in the record. To the contrary, TCCC has evidence Reck received and signed the NOR. Leventhal Decl. Ex. I. Further, it appears she received the correct NOR, Form H-8. In the settlement statement signed by Reck on November 12, 2003, she indicated that the money owed on the original mortgage was owed to Ameriquest, not TCCC. Leventhal Decl. Ex. G. At oral argument, TCCC admitted that Ameriquest was its corporate relative but maintained that they are distinct legal entities. Reck has not come forward with any facts demonstrating otherwise. Accordingly, the proper form was Form H-8, which is used for borrowers refinancing a mortgage loan with a creditor other than the original mortgage creditor. 12 C.F.R. § 226 app. H (providing Form H-8 as the

5

general model rescission form and Form H-9 as the form to be used when the borrower is refinancing with the original creditor).  Because Reck was provided with the correct NOR, and TCCC did not violate any provisions of the TILA, Reck had until November 8, 2003, three days after executing the mortgage, to rescind.  Accordingly, the notice of rescission Reck mailed to TCCC on August 9, 2006, was not timely and Count II is dismissed.

**C.     Supplemental Jurisdiction**

Having dismissed the only federal claim at issue in this case, the Court must decide whether to exercise supplemental jurisdiction over Reck's remaining state law claims.[2]  It is within this Court's discretion to exercise supplemental jurisdiction after dismissing Reck's only federal claim.  Kan. Pub. Employees Ret. Sys. v. Reimer & Koger, 77 F.3d 1063, 1067-68 (8th Cir. 1996).  In order to decide whether to exercise supplemental jurisdiction, this Court must balance factors such as judicial economy, convenience, fairness and comity.  Quinn v. Ocwen Fed. Bank FSB, 470 F.3d 1240, 1248-49 (8th Cir. 2006).

Because the state law claims in this case do not involve complex, novel issues of law, and because the Court is able at this point to fully resolve the claims in this case, it exercises its supplemental jurisdiction to decide the state law claims in the interest of judicial economy and convenience.

**D.     Count I**

In Count I, Reck seeks declaratory judgment that the deed is invalid and, consequently, the mortgage is also invalid.  Compl. ¶ 61.  Reck contends that the deed is invalid because Diane

---

[2] Diversity jurisdiction is not available in this case.  Although the amount in controversy is sufficient, there is not complete diversity among the parties.

lacked capacity to assign her interest in the home to Reck.  Id.  Reck also seeks declaratory judgment that the mortgage was unconscionable.  Id.  Despite pleading unconscionability in her complaint, Reck failed to respond to TCCC's motion to dismiss that portion of the complaint and thus her unconscionability argument is waived.  TCCC argues the equitable doctrine of unclean hands bars Reck from claiming the mortgage is void because Diane lacked capacity to sign the deed.  TCCC contends that because Reck "affirmatively alleges having obtained a quitclaim deed from her mother when her mother was legally incompetent," and because Reck was the only one in a position to recognize Diane's incompetency, Reck cannot benefit from her own misconduct.  Def.s' Mem. in Support of Mot. to Dismiss [Docket No. 5] at 8.

"Under Minnesota law, the doctrine of unclean hands will be invoked only to deny equitable relief to a party whose conduct has been unconscionable by reason of a bad motive or where the result induced by that party's conduct will be unconscionable either in the benefit to that party or in the injury to others."  Foy v. Klapmeier, 992 F.2d 774, 779 (8th Cir.1993).  By her own admission, Reck obtained her mother's signature on the quit claim deed at a time when she believed her mother to be incompetent.  Allowing her to benefit by declaring the mortgage void as a result of that conduct would be unconscionable.  Accordingly, the Court concludes that the doctrine of unclean hands bars Reck from equitable relief and grants TCCC's motion to dismiss Count I.

**E.     Count III**

In Count III, Reck seeks declaratory judgment that there was no default justifying the foreclosure. Reck contends that TCCC[3] failed to credit a payment she made under the first forbearance agreement ("Agreement I"), which if credited correctly would have fully satisfied the requirements of Agreement I. Compl. ¶¶ 79-81. Reck asserts that because TCCC believed Agreement I was incomplete, it made her enter into a second agreement ("Agreement II"). Id. ¶ 81. Reck then asserts that TCCC forced her to enter into the third and final agreement ("Agreement III") because it believed she was not current under Agreement II. Id. ¶ 84.

Even by accepting Reck's assertion that TCCC failed to properly credit a payment she made pursuant to Agreement I, and that there was no basis for negotiating subsequent agreements, Reck is not entitled to relief under Count III. Reck failed to meet the pleading requirements of Twombly by failing to set forth any facts demonstrating that she did not default under Agreement III. Indeed, Reck does not allege that she was not in default under Agreement III, rather she simply contends that Agreement III never should have been executed. Because Reck failed to meet the pleading requirements set forth in Rule 8(a) and Twombly, Count III is dismissed.

**F.     Count VI**

In Count VI of her Complaint, Reck contends that Defendant Dennis Tureson, Jr., was negligent. Reck contends that Tureson had a duty to determine whether Diane was competent to sign the quit claim deed and a duty to observe Diane actually signing the document. Compl. ¶¶

---

[3] In Count III of her Complaint, Reck incorrectly identifies Ameriquest as the lender of the refinance mortgage.

101-103. Reck asserts that Tureson did not witness Diane signing the document, that if he had fulfilled that duty he would have determined that Diane was incompetent, and that because of his negligence, she was damaged in excess of $50,000. Id. ¶ 104.

In order to prove negligence in Minnesota the plaintiff must show: (1) that the defendant had a duty of care; (2) the defendant breached that duty; (3) the plaintiff suffered an actual injury; and (4) that the defendant's breach of duty was the proximate cause of the plaintiff's injury. Lubbers v. Anderson, 539 N.W.2d 398, 401 (Minn. 1995). Under Minn. Stat. § 395.085, a notary is required, in witnessing or attesting a signature, to "determine, either from personal knowledge or from satisfactory evidence, that the signature is that of the person appearing before the officer and named in the document." It appears that Tureson failed his duty to comply with that requirement of section 395.085; however, Reck must still demonstrate that by breaching his duty, Tureson caused the injury. Tureson had no duty to determine competency and accordingly, even if he had witnessed or attested to Diane's signature, he was under no obligation to evaluate her competency before allowing her to sign. Because Reck has failed to set forth any facts demonstrating causation, Claim VI is dismissed.

## IV.  CONCLUSION

Based upon the foregoing, and all of the files, records and proceedings herein, **IT IS HEREBY ORDERED** that:

1.  Defendants' Motion to Dismiss [Docket No. 4] is **GRANTED**; and

2.  Plaintiff's Complaint is **DISMISSED WITH PREJUDICE**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

BY THE COURT:


　　　s/Ann D. Montgomery　　　
ANN D. MONTGOMERY
U.S. DISTRICT JUDGE

Dated:  January 3, 2008.